UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| JOYCE ADEYINKA | : <br> : <br> : <br> : Case No. 1:24-cv-1129 <br> : <br> : |
| *Plaintiff* | : <br> : |
| v. | : <br> : |
| OLALEKAN AKINTOMIDE | : <br> : <br> : |
| *Defendant* | : <br> : |

COMPLAINT FOR DECLARTORY, INJUNCTIVE RELIEFS, AND DAMAGES

Plaintiff, Joyce Adeyinka, by her counsel, Grace Oluyemi, Esq., hereby brings this Complaint for declaratory and injunctive reliefs, as well as damages, and pleads as follows:

PARTIES

1. Plaintiff is a resident of Baltimore County, Maryland.

2. The defendant is a resident of Anne Arundel County, Maryland.

JURISDICTION AND VENUE

3. The court has jurisdiction because parties are resident in Maryland.

4. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 (b), because the unlawful actions alleged herein were committed within the District of Maryland.

5. The amount sought as damages does not exceed $30,000.00.

## STATEMENT OF FACTS

6. Plaintiff is the presiding Pastor of Solomon's Porch, Baltimore.

7. Defendant and his wife, Ms. Akintomide, (recently divorced) became members of Solomon's Porch (the Church) on Oct 03, 2011.

8. Ms. Akintomide became a member of the choir and the women's group, while Defendant became a member of the men's ministry by default.

9. Since joining the congregation, Plaintiff received several calls to mediate in disagreements between the Defendant and Ms. Akintomide.

10. Plaintiff and other church officers also made several unsuccessful attempts to mediate including referring the family to a licensed family therapist.

11. On or about 12/20/2022, Plaintiff and her husband received an urgent call to the Defendant's residence where Defendant and his spouse were engaged in domestic squabble.

12. Given the gravity of the situation, Plaintiff and her husband remained at Defendant's residence till 3:00 AM making several efforts to ensure a peaceful resolution.

13. Efforts to counsel, and mentor Defendant and Ms. Akintomide continued after the incident by church officers, including Plaintiff.

14. Ms. Akintomide finally moved out of the house on December 21, 2022, and Plaintiff received news of this after the fact.

15. On Feb 10, 2023, Defendant called Plaintiff's husband and alleged that Plaintiff encouraged Ms. Akintomide to leave her matrimonial home. He said Ms. Akintomide moved out because Plaintiff stated that the environment was toxic.

16. He also accused Plaintiff of permitting Ms. Akintomide to continue her responsibilities as a church worker.

17. On March 25, the Defendant placed a call to the Plaintiff in the course of which he blamed her for the problems of his marriage, accused her of not properly counseling Ms. Akintomide and threatened to destroy Plaintiff's reputation and that of her children.

18. On April 03, Defendant reported Plaintiff to her Regional Pastor following which the Regional Pastor invited both parties for a meeting. At the meeting, Defendant claimed that Plaintiff had failed him and was working against his interest. Regional Pastor listened to both parties and advised Defendant not to antagonize Plaintiff as she was merely doing her best to assist Defendant and his family.

19. Defendant continued to make calls to the Plaintiff where he made spurious allegations, harassed and threatened her.

20. On October 16, Defendant posted on his Facebook page that if anything evil happened to him, Pastor Joyce of Solomon's Porch Worship Center should be held responsible.

21. This was soon followed by another post on the said day where he claimed that Plaintiff had conspired with his estranged wife to steal his property.

22. By this time, Plaintiff started receiving calls from other Congregants, friends and family members who expressed concern about her wellbeing and apprehension about the incessant public denigration of the Plaintiff by the Defendant.

23. On October 21, Defendant called Plaintiff's eighty-one–year–old Uncle, who had acted in the capacity of a father to the Plaintiff from her childhood. He told Uncle that Plaintiff had counselled his wife to leave him and conspired with her to steal his property.

24. This call agitated Plaintiff's Uncle and in turn, agitated Plaintiff, and her family.

25. The Plaintiff suffered public ridicule, embarrassment, and humiliation and lost sleep over the matter.

26. As a result of the foregoing, Plaintiff was constrained to file an interim peace order against the Defendant, and this was heard and granted by the court on October 24.

27. Notwithstanding the interim peace order, Defendant continued to make false allegations against the Plaintiff to Plaintiff's Congregants, friends and family, including senior members of the local church and the Continental Chairman of the regional church, who expressed concern for Plaintiff's safety.

28. Despite the grant of a final peace order on November 2, 2023, ordering Defendant to desist from harassing Plaintiff, Defendant's campaign of calumny has not abated.

29. Recently, from February 26 to February 28, 2024, he posted on his Facebook page alleging that some church leaders conspired with his wife to destroy his marriage and steal his home.

30. Similar posts made on WhatsApp on March 11, 2024, were seen by joint acquaintances, Pastors, and other members of the church.

31. On March 1, 2024, Plaintiff sent similar WhatsApp messages to the Chairman of the mother church in North America.

## STATEMENT OF CLAIM

### Count 1

### Defamation

32. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 6 through 31 above as if set out herein.

33. Despite Plaintiff and other church officers' efforts to mediate in the disagreements between Plaintiff and Ms. Akintomide, Defendant called Plaintiff's husband on Feb 10, 2023, and

claimed that Plaintiff encouraged Ms. Akintomide to leave her matrimonial home due to the toxicity of the environment.

34. Plaintiff did not have foreknowledge that Ms. Akintomide had left the house with their daughter and was informed after the fact.

35. Following Defendant's report to the regional Pastor on April 03, 2023, Regional Pastor invited both parties for a meeting. At the meeting, Defendant alleged that Plaintiff had failed him and was working against his interest. Regional Pastor admonished Defendant to desist from antagonizing Plaintiff who was merely doing her best to assist Defendant and his family.

36. Defendant made several posts on his Facebook page on October 16, 2023, and claimed in one of the posts that Plaintiff should be held responsible if anything evil happened to him. In the other post, he alleged that Plaintiff conspired with Ms. Akintomide to steal his property.

37. Defendant's October 16 Facebook posts generated so much furor that Plaintiff received several calls and/or text messages from other Congregants, friends and family members who expressed concern about her wellbeing and apprehension about the incessant public denigration of Plaintiff by the Defendant.

38. On October 21, 2023, Defendant called Plaintiff's eighty-one–year–old Uncle, who had acted in the capacity of a father to the Plaintiff from her childhood. He told Uncle that Plaintiff had counselled Ms. Akintomide to leave him and conspired with her to steal his property.

39. This call agitated Plaintiff's Uncle and this in turn, agitated Plaintiff, and her family.

40. Plaintiff suffered public ridicule, embarrassment, and humiliation and lost sleep over the matter.

41. As a result of the foregoing, Plaintiff was constrained to petition the District Court for an interim peace order against the Defendant, and this was heard and granted by the court on October 24.

42. Notwithstanding the interim peace order, Defendant continued to make false allegations against the Plaintiff to Plaintiff's Congregants, friends, and family, including senior members of the local church and the Continental Chairman of the regional church, who expressed concern for Plaintiff's wellbeing and safety.

43. Despite the order of court suing for peace, Defendant's campaign of calumny has not abated.

44. Recently, from February 26 to February 28, 2024, he posted on his Facebook page alleging that some church leaders conspired with his wife to destroy his marriage and steal his home.

45. Similar posts made on WhatsApp on March 11, 2024, were seen by joint acquaintances, Pastors, and other members of the church.

46. On March 1, 2024, Plaintiff sent similar WhatsApp messages to the Chairman of the mother church in North America.

   Wherefore, Plaintiff prays the court for the following reliefs: -

   a) A declaration that the Defendant defamed Plaintiff's character,

   b) An injunction restraining Defendant from making and publishing any further statement defaming the Plaintiff,

   c) An order of retraction and apology on all platforms where the defamatory information were published,

d) An award of compensatory and punitive damages in the sum of $20,000.00, or such amount allowed by law,

e) Reasonable attorney's fee and costs of this action, and

f) All such other and further relief as may be just and necessary.

## Count 2

### Invasion of privacy—placing a person in a false light

47. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 6 through 31 above as if set out herein.

48. Plaintiff is the presiding Pastor of Solomon's Porch, Baltimore, where Defendant and his family worshipped as members.

49. Despite several efforts made by Plaintiff and other senior officers of Solomon Porch to mediate in the issues between Defendant and Ms. Akintomide, Ms. Akintomide moved out of the matrimonial home in December 2022 taking her daughter with her.

50. Plaintiff did not have foreknowledge that Ms. Akintomide was going to leave the home.

51. Defendant made several posts on his Facebook page on October 16, 2023, where he claimed in one of the posts, that if anything bad ever happened to him, Plaintiff should be held responsible. In the second post, he claimed that Plaintiff conspired with Ms. Akintomide to steal his property.

52. Defendant's October 16 Facebook posts were so egregious that several Congregants, including family and friends, reached out to the Plaintiff to express dismay about the situation and concern about Plaintiff's wellbeing and reputation.

53. Plaintiff suffered public ridicule, embarrassment, and humiliation and lost sleep over the matter.

54. Recently, from February 26 to February 28, 2024, he posted on his Facebook page alleging that some church leaders conspired with his wife to destroy his marriage and steal his home.

55. Similar posts made on WhatsApp on March 11, 2024, were seen by joint acquaintances, Pastors, and other members of the church.

56. On March 1, 2024, Plaintiff sent similar WhatsApp messages to the Chairman of the mother church in North America.

>  Wherefore, Plaintiff prays the court for the following reliefs: -
>
>  a) A declaration the Defendant invaded the privacy of the Plaintiff by placing her in false light,
>
>  b) An injunction restraining Defendant from making and publishing any statement placing the Plaintiff in false light, and
>
>  c) An order of retraction and apology on all platforms where the statements placing Plaintiff in false light were published,

## Count 3

### Intentional infliction of emotional distress

57. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 6 through 31 above as if herein set out seriatim.

58. Plaintiff, alongside other senior officers of Solomon Porch, made several efforts to help Defendant and Ms. Akintomide resolve their differences.

59. On Feb 10, 2023, Defendant called Plaintiff's husband and accused Plaintiff of encouraging Ms. Akintomide to leave her matrimonial home, even though Plaintiff had no knowledge that Ms. Akintomide was going to leave the home before she did.

60. On March 25, the Defendant placed a call to the Plaintiff and accused her of being the cause of the problems in his marriage, and not properly counseling his wife. He also threatened to destroy Plaintiff's reputation and that of her children.

61. He continued his campaign to bring the Plaintiff to disrepute and claimed at a meeting, on April 3, 2023, by the Regional Pastor to resolve dispute between the parties, that Plaintiff had failed him and was working against his interest.

62. Defendant continued to make calls to the Plaintiff where he made spurious allegations, harassing and threatening her, and threatening to disgrace her family.

63. On October 16, Defendant posted on his Facebook page that if anything evil happened to him, Plaintiff should be held responsible.

64. This was soon followed by another post on the same day where he claimed that Plaintiff had conspired with his estranged wife to steal his property.

65. By this time, Plaintiff started receiving calls from other Congregants, friends and family members who expressed concern about her wellbeing and apprehension about the incessant public denigration of the Plaintiff by the Defendant.

66. Plaintiff was embarrassed and humiliated by these acts of the Defendant affecting her mental and emotional health, as well as her responsibilities to her community.

67. On October 21, Defendant called Plaintiff's eighty-one–year–old Uncle, who had acted in the capacity of a father to the Plaintiff from her childhood. He told Uncle that Plaintiff had counselled Ms. Akintomide to leave him and conspired with her to steal his property.

68. This call agitated Plaintiff's Uncle and this in turn, agitated Plaintiff, and her family.

69. As a result of the foregoing, Plaintiff was constrained to petition the court for an interim peace order against the Defendant, and this was heard and granted by the court on October 24.

70. Notwithstanding the interim peace order, Defendant continued to make false allegations against the Plaintiff to Plaintiff's Congregants, friends, and family, including senior members of the local church and the Continental Chairman of the regional church, who expressed concern for Plaintiff's safety.

71. Despite the District Court's grant of a final peace order on November 2, 2023, Defendant's campaign of calumny has not abated.

72. Recently, from February 26 to February 28, 2024, he posted on his Facebook page alleging that some church leaders conspired with his wife to destroy his marriage and steal his home.

73. Similar posts made on WhatsApp on March 11, 2024, were seen by joint acquaintances, Pastors, and other members of the church.

74. On March 1, 2024, Plaintiff sent similar WhatsApp messages to the Chairman of the mother church in North America.

    Wherefore, Plaintiff prays the court for the following reliefs: -

    a) An injunction permanently restraining the Defendant from inflicting emotional distress on the Plaintiff,

    b) Such other reliefs as the court may deem just and necessary.

**OATH AND AFFIRMATION**

**I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE STATEMENTS MADE AND THE FACTS CONTAINED IN THE FOREGOING COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

_____**/s/\***_____

Joyce Adeyinka, Plaintiff

\*Counsel hereby certifies that she has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

Respectfully Submitted by,

_____/s/_____
Grace Oluyemi, Esq.
Federal Bar No.: 30916
Grace Law, LLC
1451 Rockville Pike
Suite 250
Rockville MD 20852
(347) 283-7967